Filed 6/23/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOSEPH SEMIR MUTWAKIL AMIN,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | G050191<br><br>(Super. Ct. No. 12HM10360)<br><br>O P I N I ON |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Brett London, Judge. Petition granted.

Frank Ospino, Public Defender, Mark S. Brown, Assistant Public Defender, and Scott Van Camp, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Tony Rackauckas, District Attorney, and Matthew Lockhart, Deputy District Attorney, for Real Party in Interest.

In this writ proceeding, we examine whether the People of the State of California, real party in interest, should be allowed to rescind a misdemeanor plea agreement under which they agreed not to pursue certain felony charges against petitioner Joseph Semir Mutwakil Amin. The People contend the agreement is voidable due to mistake of fact and for other reasons, but we disagree and grant petitioner's request to enforce the deal.

FACTUAL AND PROCEDURAL BACKGROUND

On July 17, 2012, petitioner was at an Albertson's grocery store in Irvine. He snuck up behind a woman in the frozen food isle, reached under her dress with his cell phone and started videotaping. When the woman asked petitioner what he was doing, he said he was sorry and quickly departed. Although petitioner fled the scene, the store manager called the police and provided responding Irvine Police Officer T. Goodbrand with a surveillance DVD of the incident.

Upon watching the DVD, Goodbrand immediately recognized petitioner from a prior incident involving a woman who had been groped at a park near petitioner's residence. Goodbrand went to petitioner's residence and asked him about the Albertson's incident. Petitioner admitted using his cell phone to videotape underneath the victim's dress. He also admitted doing the same thing to various other women at the store about six times in the previous three months. He voluntarily relinquished his cell phone to Goodbrand, who booked it into evidence and prepared a report containing the above information.

Goodbrand's report was the primary police report in the case, but it was not the only report. On July 18 and August 1, Police Officers J. McDonald and A. Guo prepared supplemental reports detailing their work on the case. Their reports are not germane to the issues before us, but on August 9, Police Officer S. Crawford prepared a four-page supplemental report that has become important in how this case has played out.

2

On the first page of his report, Crawford stated he was familiar with petitioner and knew he "was listed as a subject of interest in previous investigations that pertained to the inappropriate touching of females." Crawford summarized those investigations as follows: 1) In case number 11-09255, a suspect inappropriately touched a female and then fled into petitioner's residence. However, the suspect could not be identified; 2) in case number 11-14086, petitioner was identified as a person of interest in the "inappropriate touching of two 12-year-old females," but the girls were unable to identify petitioner from a photo lineup they were shown; and 3) in an unreported incident Crawford learned about, petitioner allegedly touched a female inappropriately while she was exercising at a community gym. There is no information in Crawford's report as to whether any of these investigations were active or ongoing at the time he prepared the report.

Crawford also reported that he had reviewed the results of the forensic examination that was conducted on petitioner's cell phone. The examination not only revealed the video of the above-described incident that occurred at Albertson's on July 17, 2012, but several other episodes in which petitioner surreptitiously videotaped women and girls at public locations. Crawford observed, "The focus of these videos . . . appears to [be] the buttocks area of females, and on at least two occasions, [petitioner] was able to place his cell phone under a female's skirt/dress."

Based on this information, the District Attorney of Orange County charged petitioner with two misdemeanor offenses stemming from the Albertson's incident. Count 1 alleged petitioner secretly videotaped underneath the victim's clothing for the purpose of sexual gratification, and count 2 alleged petitioner unlawfully prowled in Albertson's for the purpose of committing that offense. (Pen. Code, § 647, subds. (j)(2), (h).)

Petitioner retained Brian Gurwitz, a former senior deputy district attorney, to represent him on the case. On September 11, 2012, Gurwitz personally requested

3

discovery from deputy district attorney Tina Patel while she was handling misdemeanor arraignments in the superior court. At that time, Patel called for petitioner's case file and read a factual summary of the misdemeanor charges that was prepared by the filing deputy, Carolyn Carlisle-Raines. Patel then provided Gurwitz with Officer Goodbrand's police report, which as described above, actually contained information from several different officers. However, Patel did not read the police report at that time.

The following week, at petitioner's arraignment, Patel and Gurwitz agreed that petitioner would plead guilty to the charges in exchange for three years' probation. Although the crimes did not require mandatory sex offender registration, petitioner agreed to lifetime registration and to stay away from all Albertson's stores. He also agreed to complete 52 counseling sessions within 2 years of his plea. In return, Patel expressly agreed petitioner's plea would "resolve[] all incidents referenced in [the] police report, charged & uncharged." These terms and conditions were memorialized in the parties' plea agreement, and after petitioner waived his right to trial and pleaded guilty, the Honorable Brett London sentenced him in accordance with the agreement.

That wasn't the end of the story, however. Not long after petitioner was sentenced, Patel received a call from the Irvine police informing her they were now able to "make [a] case" against petitioner in case number 11-14086, which involved the two 12-year-old girls who were allegedly molested. Therefore, the district attorney filed a two-count felony complaint against petitioner on October 9, 2012. The complaint alleged petitioner committed a forcible lewd act against two girls under the age of 14, in violation of Penal Code section 288, subdivision (b)(1).

A week later, Gurwitz filed a nonstatutory motion to dismiss the complaint. Because case number 11-14086 was referenced in the police report in petitioner's misdemeanor case, Gurwitz argued it was resolved by virtue of petitioner's plea in that case. In its opposition papers, the prosecution argued the plea was unenforceable and subject to rescission because it was based on fraud and mistake of fact. The prosecution

4

also claimed it would violate public policy to read the plea agreement so as to preclude prosecution of the felony child molestation charges.

On October 22, 2012, Judge Derek G. Johnson conducted an evidentiary hearing on the matter. Gurwitz testified that on the day petitioner pled guilty, he and Patel talked about the terms of the plea agreement. In light of the counseling and registration requirements petitioner was willing to accept, Gurwitz asked Patel if she would agree not to prosecute petitioner for any of the "other shit" that was mentioned in the police report. When Patel said yes, Gurwitz added the term about the plea resolving all incidents that were referenced in the police report. He then showed Patel what he wrote, she said it was fine, and that was the end of their discussion. According to Gurwitz, at no point did he state or imply to Patel that the other incidents referenced in the police report were limited to surreptitious videotaping. Nor did Patel ask him if that was the case.

On cross-examination, the prosecution probed about why Gurwitz did not volunteer that information to Patel. (The questioning was designed to test Gurwitz's credibility regarding the circumstances under with plea was made.) Gurwitz testified he did not talk to Patel about the police report because he presumed she was familiar with the report and knew it referenced alleged incidents of felony child molestation by petitioner. It just never occurred to him that a prosecutor would ever agree not to prosecute a defendant for conduct referenced in a police report without reading the report beforehand. Therefore, even though he and Patel did not specifically discuss the fact the police report referenced felony child molestation, he understood their plea agreement to foreclose future prosecution for that offense, as well as all of the other alleged crimes referenced in the report.

That was not Patel's understanding of the agreement. In fact, her testimony as to what transpired on the day of petitioner's plea differed considerably from Gurwitz's version of events. Explaining how things played out, Patel testified she had not read the

5

police report before she and Gurwitz started discussing the terms of the plea agreement. And the factual summary prepared by filing deputy Carlisle-Raines did not mention any crimes other than the subject misdemeanor charges. So when Gurwitz brought up the term about not prosecuting petitioner for all other incidents referenced in the police report, she asked Gurwitz what he was talking about. According to Patel, Gurwitz told her the incidents involved "similar stuff." She asked Gurwitz if that meant the same "up the skirt stuff" involved in the present misdemeanor case, and Gurwitz told her "yes, similar stuff."

Knowing Gurwitz was a former prosecutor, Patel trusted him to a certain extent. However, she felt she had a professional responsibility to independently verify his representations. Therefore, she decided to look through her case file, which included Officer Goodbrand's report. Patel testified that, even though her misdemeanor arraignment calendar was quite busy that day, and she was the only prosecutor on hand, she had "as much time as [she] wanted" to review Goodbrand's report "to determine . . . what . . . other similar stuff" Gurwitz was talking about. In fact, she admitted she could have read the entire report if she wanted to, and she did not have to rely on what Gurwitz told her. Patel also admitted she knew Goodbrand's police report included supplemental reports from other officers and that she understood the term "police report" in the plea agreement to include not only Goodbrand's report, but all of those supplemental reports as well.

Yet, when Patel reviewed the police report, she did not read it in any great detail. Instead, she just "perused" it to see if it was consistent with Gurwitz's representation or whether it contained information about any other alleged crimes that were perhaps more serious in nature. When she got to the part in Crawford's report about

6

the police finding videos of multiple up-skirt incidents on petitioner's cell phone, she was satisfied with the plea agreement and the particular terms that Gurwitz added.[1]

It is undisputed the reference to those particular videos appears in Officer Crawford's report right after his factual description of the subject felony child molestation incident. Although the date and case number of that incident are in bold type, Patel testified she simply did not notice Crawford's factual description of that incident, even though she was reviewing the report for the very purpose of determining whether it contained any information of that sort. Consequently, when she signed the plea agreement, she thought it only shielded petitioner from future prosecution for misdemeanor up-skirt picture taking, not felony child molestation. Had she known the police report referred to such felony conduct, she never would have agreed to the plea bargain.

Based on this testimony, Judge Johnson made several findings. First, there was no fraud or duress on Gurwitz's part. (In other words, the judge impliedly rejected Patel's testimony that Gurwitz misled her about the contents of the police report.) Second, the term "police report" in the plea agreement was unambiguous because the parties clearly understood that term to include all four of the police reports that were prepared in the case. Third, although Patel was negligent for failing to read the police report more carefully, she was not reckless, nor did she operate outside the boundaries of good faith and fair dealing. And fourth, it would be unconscionable to construe the plea bargain to preclude the prosecution of the felony child molestation charges. The latter two findings were key to the court's ultimate ruling that the plea agreement was subject to rescission due to mistake of fact. The court simply did not believe the People should

---

[1] Patel initially testified she did not read any part of Crawford's report during the plea negotiation process. However, she eventually admitted she did read parts of the report in order to verify Gurwitz's representations. The admission came after defense counsel pointed out to Patel that Crawford's report is the only one that mentions the fact petitioner had multiple up-skirt videos on his phone.

7

have to bear the risk for the misunderstanding that resulted from Patel's negligent behavior. It thus denied petitioner's motion to dismiss the complaint.

Following the preliminary hearing, petitioner renewed his request to dismiss in the trial court before David A. Hoffer. Judge Hoffer agreed with Judge Johnson that the plea agreement was voidable due to mistake of fact. Therefore, he too denied petitioner's motion to dismiss the felony charges.

Petitioner then sought writ relief in this court and we directed Judge London, the original sentencing judge, to hold a hearing on whether petitioner's misdemeanor plea agreement should be rescinded. At the hearing, the prosecution accused Gurwitz of fraud and trying to "pull[] a fast one" on Patel. Judge London did not reach that issue, but he did find Patel signed the plea agreement based on a mistake of fact and it would be unconscionable to enforce the agreement as written. He therefore granted the People's request to rescind the agreement. After the appellate department of the superior court refused to disturb that ruling, petitioner filed the instant petition for a writ of mandate.

## DISCUSSION

### *Mistake of Fact*

The main issue before us is whether petitioner's plea agreement is rescindable due to mistake of fact. Because Patel entered into the agreement knowing full well that she had limited knowledge of what was written in the police report, we do not believe the mistake of fact doctrine applies in this case.

Plea bargaining is an essential component of our criminal justice system. (*Santobello v. New York* (1971) 404 U.S. 257, 261.) It is based on the notion of fairness and the understanding the parties will honor all the terms they agreed to. (*Ibid*.) Indeed, "[o]ur Supreme Court has repeatedly recognized that ""[w]hen a guilty plea . . . is entered in exchange for specified benefits . . . both parties . . . must abide by the terms of the

8

agreement.'" [Citations.]" (*People v. Collins* (1996) 45 Cal.App.4th 849, 862; accord, *Santobello v. New York, supra,* 404 U.S. at p. 262.)

As representatives of the government, it is particularly important for prosecutors to live up to any and all promises that persuade a defendant to give up his constitutional right to trial and plead guilty to a criminal offense. (See *People v. Mancheno* (1982) 32 Cal.3d 855, 860 [emphasizing due process and the integrity of the plea bargaining system require the state to "keep its word when it offers inducements in exchange for a plea of guilty"].) Courts expect prosecutors to honor their plea promises, even though prosecutors are often overworked and sometimes make innocent mistakes in the course of the plea bargaining process: A "heavy workload may well explain [such mistakes], but it does not excuse them." (*Santobello v. New York, supra,* 404 U.S. at p. 260 [prosecutor's innocent mistake insufficient basis to justify government's breach of plea agreement].)

Given the stakes involved in plea bargaining, some courts do not even allow prosecutors to raise mistake of fact as a defense to nonperformance of a plea term. (See, e.g., *United States v. Partida-Parra* (9th Cir. 1988) 859 F.2d 629, 633-634.) Although contract principles generally apply to plea bargains (*ibid.*), and mistake of fact is a traditional contract defense, there are two reasons why the rules governing contracts may require tempering in the context of a plea agreement: "First, the defendant's underlying 'contract' right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law. [Citation.]" (*United States v. Harvey* (4th Cir. 1986) 791 F.2d 294, 300.) And second, plea bargains implicate the "'honor of the government, public confidence in the fair administration of justice, and the effective administration of justice . . . .' [Citation.]" (*Ibid.*)

In light of these considerations, the Ninth Circuit Court of Appeals has declined to extend the contract law analogy to invalidate a plea agreement based on

9

mistake of fact. (*United States v. Partida-Parra, supra,* 859 F.2d at p. 634.) Indeed, the Ninth Circuit has long held that a prosecutor's "subsequent discovery that [his or her] decision to enter into [a particular] plea agreement was based on mistake of fact [does] not nullify the agreement or excuse the government from compliance with its terms. [Citation.]" (*United States v. Fagan* (9th Cir. 1993) 996 F.2d 1009, 1013; see also *United States v. Hammond* (9th Cir. 2014) 742 F.3d 880, 883; *United States v. Barron* (9th Cir. 1999) 172 F.3d 1153, 1158-1159.) Although we are not bound by lower federal court decisions (*People v. Crittenden* (1994) 9 Cal.4th 83, 120, fn. 3), the People have not provided us with any legally cognizable reason to depart from this approach.

Instead, the People simply assume that standard contract principles apply in determining whether petitioner's plea agreement should be enforced in this case. In arguing in favor of this approach, the People rightly note that rescission is available as a remedy under California law if a mistake of fact material to a contract has been shown. (Civ. Code, §§ 1577, 1689, subd. (b)(1).) However, even assuming the mistake-of-fact doctrine applies in the context of a criminal plea bargain, we do not believe the doctrine applies to the particular situation presented in this case.

The contours of the mistake-of-fact doctrine were examined in *Donovan v. RRL Corporation* (2001) 26 Cal.4th 261 (*Donovan*). In that case, the California Supreme Court determined that a defendant in a contract dispute who is claiming unilateral mistake of fact "must establish the following facts to obtain rescission of the contract: (1) the defendant made a mistake regarding a basic assumption upon which the defendant made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to the defendant; (3) the defendant does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable." (*Id.* at p. 282.)

The parties readily agree the first two requirements for rescission are met. Indeed, it is clear Patel agreed to the plea bargain upon the mistaken assumption the

10

police report only referenced misdemeanor up-skirt picture taking, and this mistake would have a material adverse effect on the People's performance because it would preclude them from prosecuting petitioner for the felony child molestation referenced in the report.

There is, however, no consensus on the third prong of the *Donovan* test, which requires us to ascertain whether Patel bore the risk of her mistake regarding what type of information was contained in the police report. Per *Donovan*, section 154 of the Restatement Second of Contracts governs this issue. (*Donovan, supra*, 26 Cal.4th at p. 283.) Under that section, "'A party bears the risk of a mistake when [¶] (a) the risk is allocated to him by agreement of the parties, or (b) [¶] he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or [¶] (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.'" (*Ibid.*, quoting Rest.2d Contracts, § 154 (hereinafter Section 154).)

Because the risk of Patel's mistake about what the police report contained was not allocated to her by the parties' agreement or the court, only the second criteria is at issue in this case.[2] Speaking to the second criteria, the comment to Section 154 explains: "Even though the mistaken party did not agree to bear the risk, he may have been aware when he made the contract that his knowledge with respect to the facts to which the mistake relates was limited. If he was not only so aware that his knowledge was limited but undertook to perform in the face of that awareness, he bears the risk of the mistake. It is sometimes said in such a situation that, in a sense, there was not mistake but 'conscious ignorance.'"

Section 154 recognizes that risk allocation is an important aspect of all contracts: "Every time parties enter a contract, they act with incomplete information.

---

[2] In comparison, the result in *Donovan* turned on the applicability of the third criteria, making that case of limited utility to us as far as the risk factor is concerned. (*Donovan, supra*, 26 Cal.4th at p. 283.)

11

They make judgments about the desirability of acquiring (and waiting for) additional information, and of creating specific contractual provisions to handle particular eventualities. Where they have been explicitly concerned about an issue, but decide to press forward without further inquiry or explicit provision, it is reasonable to suppose that they intend the contract to dispose of the risk in question, i.e., to bar any reopening at the behest of the party who, it turns out, would have done better without the contract." (*Harbor Ins. Co. v. Stokes* (D.C.Cir. 1995) 45 F.3d 499, 502.)

Consequently, rescission is not available if the purported mistake "'relate[s] to one of the uncertainties of which the parties were conscious and which it was the purpose of the compromise to resolve and put at rest.' [Citations.]" (*Harbor Ins. Co. v. Stokes, supra,* 45 F.3d at p. 502; accord, *Stermer v. Board of Dental Examiners* (2002) 95 Cal.App.4th 128, 134 ["the kind of mistake which renders a contract voidable does not include 'mistakes as to matters which the contracting parties had in mind as possibilities and as to the existence of which they took the risk'"].) Rather, rescission is warranted only when "the subject of uncertainty has not been a concern of the parties, i.e., where the post-contract discovery comes out of left field . . . . [Citation.]" (*Harbor Ins. Co. v. Stokes, supra,* 45 F.3d at p. 502.)

Here, both parties knew the police report referenced various alleged incidents of criminal conduct by petitioner. Patel's mistake related only to the particular type of conduct that was referenced in the report. To find that out, Patel looked over the police report before agreeing to the plea bargain. She was not only looking for references to other up-the-skirt incidents, she wanted to see if there were any references to "any other sex crimes" that might be impacted by the plea agreement, such as felony child molestation. Despite this, Patel only perused the report, she did not read it word for word. And after so doing, she expressed her satisfaction with the terms of the agreement. She was willing to go through with the agreement even though she *knew* she only had limited knowledge of the contents of the report. Given that Patel contemplated the report

12

might contain references to felony sex crimes when she entered into the agreement, this prospect cannot be said to have "come out of left field" after the agreement was formed.

Nevertheless, as the People point out, the judges below were not convinced Patel was acting in conscious ignorance of her mistake for purposes of Section 154. Speaking to that issue, Judge Hoffer opined that while Patel "had limited knowledge of other up-the-skirt incidents" in the police report, she "was not aware that she had limited knowledge of felony sex offenses. She didn't think there were any, and she was not aware of that fact. If she had, she never would have entered into this agreement. It is ludicrous to think that a misdemeanor deputy district attorney in a busy arraignment court would be bargaining away felony sex offenses . . . against kids[.]"

However, the issue is not whether Patel intended to bargain away the felony offenses referenced in the police report. Instead, we must decide whether the prosecution should have to bear the risk of the mistake that resulted from her failure to read the report more carefully. This turns on whether she was aware she had limited knowledge of the facts to which the mistake related but decided to go through with the plea agreement anyway. She did. She knew there were other offenses involved. She perused the report because she wanted to know what they were. She failed to read it closely enough to learn they were potential felonies, but she had to know how limited her knowledge of those cases was. The choice was to decline the deal until she had a chance to fully review those reports or act in conscious ignorance to get an agreement that involved registration as a sex offender. She chose the latter – not unreasonable – course.

In finding otherwise, the trial judge made much of the fact Patel acted in good faith and her mistake resulted from mere negligence. However, while this consideration is relevant to whether the People were eligible to seek rescission in the first place (see *Donovan, supra*, 26 Cal.4th at pp. 283-284 [a defendant's failure to act in good faith and in accordance with the standards of fair dealing automatically precludes a mistake-of-fact defense]), it has no bearing on Patel's state of mind vis-à-vis the facts on

13

which her mistake was based, which is the key issue in this case. Because Patel was willing to go along with the plea bargain dispute knowing she had only limited knowledge of those facts, the law requires her to bear the risk of her mistake.

While only petitioner can be satisfied with this result, case law fully supports it. Although the issue of mistake of fact arises most often in civil cases, the above principles have been applied in criminal cases, as well. Absent evidence of fraud, an issue we discuss below, the prevailing view is that "a prosecutor may not rescind his [or her] end of [a plea] bargain due to unilateral mistake on his [or her] part." (Herman, Plea Bargaining (1997) § 10.05, p. 194.) While there is a dearth of cases in California on this issue, our examination of cases from other jurisdictions reveals that, when it comes to prosecutors' factual mistakes, it doesn't matter what the mistake is about or what the consequences of the mistake may be. It can be a mistake about the nature of the defendant's crimes that results in the prosecution being unable to charge the defendant with a serious sex offense (e.g., *People v. Martinez* (Mich.App. 2014) 861 N.W.2d 905), or it can be a mistake about the nature of the victim's injuries that results in the prosecution being unable to charge the defendant with murder (e.g., *State v. Thomas* (N.J. 1972) 294 A.2d 57). So long as the mistake concerns a fact the prosecutor had the ability to ascertain before entering into the plea bargain, the prosecutor's purported ignorance of or mistake about that fact will not suffice to void the agreement. (*Ibid*.; see also *United States v. Floyd* (3d Cir. 2005) 428 F.3d 513 [prosecutor's mistake about the defendant's potential sentence insufficient basis to invalidate plea bargain]; *United States v. Atkinson* (7th Cir. 1992) 979 F.2d 1219 [same]; *State v. King* (N.C.App. 2012) 721 S.E.2d 327 [prosecutor's mistake about the status of certain forfeited funds insufficient basis to invalidate plea bargain]; *State v. Palmer* (W.Va. 1999) 524 S.E.2d 661 [prosecutor's mistake about the extent of the defendant's criminal behavior insufficient basis to invalidate plea bargain]; *Ex parte Johnson* (Ala. 1995) 669 So.2d 205 [prosecutor's mistake about the legal consequences of the defendant's conduct insufficient basis to

14

invalidate plea bargain]; *Epperson v. State* (Ind.App. 1988) 530 N.E.2d 743, 746 [prosecutor's mistake about a witness's willingness to cooperate insufficient basis to invalidate plea bargain]; *Perkins v. Third District Court of Appeals* (Tex.Crim.App. 1987) 738 S.W.2d 276 [prosecutor's mistake about the extent of the defendant's involvement in the alleged offense insufficient basis to invalidate plea bargain]; *Ex parte Cassady* (Ala. 1986) 486 So.2d 453 [prosecutor's mistake about the number of charges pending against the defendant insufficient basis to invalidate plea bargain].)

As part of the plea agreement in our case, Patel knew she was giving up the state's right to prosecute petitioner for the alleged crimes referenced in the police report. And even though she was in the midst of a busy courtroom calendar when she made the agreement, she admitted she could have taken as much time as she needed to read the police report and ascertain what those offenses were. These facts present an even *weaker* case for rescission than the facts presented in the above-cited cases, because unlike the prosecutors in those cases, Patel had all of the information pertinent to the plea available when she accepted it. So her failure to consider the plea agreement more carefully is not grounds for excusing compliance with its stated terms. (See generally *Stewart v. Preston Pipeline, Inc.* (2005) 134 Cal.App.4th 1565, 1589 [in rejecting mistake-of-fact defense, court reiterates long-established rule that one who agrees to a contract is generally presumed to know its contents and cannot escape its terms simply by contending he or she did not read them].)

The People argue Patel should be forgiven for failing to read the police report more carefully because Gurwitz lied to her about the type of conduct that was reflected in the report. (See generally *United States v. Partida-Parra, supra,* 859 F.2d at p. 634, fn. 6 [noting courts have the inherent "power to undo a plea agreement in a case where the defendant has obtained the agreement through fraud or misrepresentation"].) However, Judge Johnson, the trier of fact at the evidentiary hearing, rejected the notion Gurwitz misled Patel about the police report. Although Patel testified Gurwitz assured

15

her the report only referenced incidents of surreptitious up-skirt picture taking, Gurwitz testified he made no such representation, and Judge Johnson ultimately sided with Gurwitz on this issue. Although Judge Johnson did not make any express credibility determinations, he explicitly rejected the People's claim Gurwitz acted in a deceitful manner during the plea process. Finding no evidence to support that claim, Judge Johnson specifically ruled out fraud or duress as a basis for invalidating the agreement. This can only mean that Judge Johnson impliedly rejected Patel's testimony Gurwitz misled her into believing the police report only referenced conduct that was similar to the current misdemeanor charges. As an appellate court, we are in no position to second-guess Judge Johnson's determination in that regard. (See generally *People v. Collins, supra,* 45 Cal.App.4th at p. 862, fn. 8 [whether fraud has been employed so as to undermine the validity of a plea agreement is a question of fact for the trial court].)[3]

But the People's attempt to blame Gurwitz for Patel's failings is unpersuasive for other reasons. Even if Gurwitz did tell Patel the police report only referenced misdemeanor up-skirt picture taking, it is clear Patel did not take that representation at face value. She knew she had an obligation to independently review the police report to determine whether that was the case, and that's exactly what she did. Since she was reviewing the report to find out what type of criminal conduct it referred to, she obviously had the opportunity to verify whether the information Gurwitz allegedly told her was true or not. While it may not have been particularly convenient for Patel to take the time to read the entire police report in a busy courtroom setting, she could have requested to trail the case to the following day to give her sufficient time to do so. There is no indication time was of the essence in negotiating petitioner's misdemeanor plea, and no indication Gurwitz's representations affected her research.

---

[3]     Judge Hoffer and Judge London understood this principle, as well. Although the People urged them to revisit Judge Johnson's factual determinations and find the plea bargain unenforceable due to fraud and misrepresentation, they declined to do so and instead based their rulings on other grounds.

16

The fact is, Patel knew before accepting the plea agreement that she had not read the police report in its entirety, and thus she knew she only had limited knowledge about the type of offenses mentioned in the report. Nevertheless, she went ahead and agreed to resolve all incidents referenced in the report. Under these circumstances, it would not be accurate to characterize Patel's failure to realize the police report referenced felony child molestation as a mistake of fact. Instead, her decision to go ahead with the plea bargain having only perused the report shows she was consciously ignorant of the facts to which her alleged mistake related. Therefore, she bore the risk of that mistake.

Because of that, we need not consider whether enforcement of the plea agreement would be unconscionable, which is the fourth requirement under *Donovan*. Given that the People failed to satisfy the third requirement regarding the allocation of risk, they are not entitled to rescind the plea agreement under the mistake of fact doctrine. (See *Donovan, supra*, 26 Cal.4th at p. 282 [a necessary perquisite for obtaining rescission of a contract based on unilateral mistake of fact is that the party seeking rescission did not bear the risk of the mistake].)

*Alternative Arguments for Voiding the Plea Agreement*

Nevertheless, the People contend the plea agreement is unenforceable because 1) Patel did not consent to the provision that precludes them from prosecuting petitioner for the felony child molestation referenced in the police report, 2) the provision was procured through fraud and misrepresentation, 3) the provision is ambiguous, and 4) the provision violates public policy. None of these theories is persuasive.

The People's lack-of-consent and fraud theories are based on the assumption Gurwitz misled Patel about the contents of the police. If that were true, we would not hesitate to find the plea agreement unenforceable. (See *People v. Collins, supra*, 45 Cal.App.4th at p. 862, fn. 8.) But as explained above, Judge Johnson flatly rejected the notion Gurwitz acted fraudulently in procuring the plea agreement. That

17

finding, which is amply supported by Gurwitz's testimony, precludes us from invalidating the contract based on lack of consent or fraud.

The People also accuse Gurwitz of misrepresentation, based on his failure to volunteer the information that petitioner had been a suspect in a child molestation incident. But the victims in that case had been unable to make an identification. And it is hard to fault Gurwitz for failing to divulge that information, since it was clearly set forth in the police report and Patel took it upon herself to read the report. As one court has aptly noted, "[T]he function of defense counsel is to represent his client to the best of his ability. While the zeal displayed in the course of this representation must not transcend bounds imposed by law or by those ethical standards and professional proprieties which govern the conduct of all members of the bar at all times, yet it forms no part of the duties of defense counsel to alert the State to imminent pitfalls or warn of possible missteps." (*State v. Thomas, supra*, 294 A.2d at pp. 60-61 [prosecutor's mistake of fact insufficient basis to void plea agreement].) Given the circumstances respecting the plea agreement in this case, as found by the trier of fact, there is no basis for impugning Gurwitz's conduct or rescinding the agreement based on anything he did or did not do.

The People also attack the plea agreement on the basis the term "police report" is ambiguous. They claim it would defy the parties' expectations and common sense to interpret the term to include all the police reports included within Officer Goodbrand's report. Yet the records shows all four of the police reports that were generated in this case related to the underlying misdemeanor charges that were investigated by Goodbrand. His report, labeled "Consolidated Occurrence Report," contains the basic factual information underlying the charges. And the other three reports, including Officer Crawford's report, clearly reference – and were designed to build on – Goodbrand's report. That is why they are labeled "supplemental" reports and that is why they were included in the packet of information that both attorneys had in this case. Patel not only had all of the reports in her possession, she actually read some of

18

Crawford's report because she believed the term "police report" referenced in the plea agreement included his report. Given Patel's subjective understanding of that term, which Gurwitz shared, the People's attempt to impose a more restrictive meaning on the term at this late date is unpersuasive. (See generally *United States v. Clark* (9th Cir. 2000) 218 F.3d 1092, 1095 [if the terms of a plea agreement are not clear on their face, we look to the facts of the case to determine what the parties understood them to mean].)

Invoking the rights of the children who were allegedly molested by petitioner in his felony case, the People argue it would violate public policy if we were to interpret petitioner's misdemeanor plea agreement to prevent the People from prosecuting that case. In so arguing, the People point out that both individual crime victims and the California citizenry as a whole have the right to expect that criminal activity will be punished to the fullest extent of the law. (Cal. Const., art. I, § 28, subd. (a).) But our state also has a compelling interest in ensuring that the prosecutors who represent it in court will honor the promises they make in negotiating plea agreements. This is so despite the fact negotiated pleas sometimes have negative unintended consequences for the prosecution. (See *People v. Martinez, supra*, 861 N.W.2d at p. 912 [generally "'even unwise plea bargains are binding on the prosecutor'"].)

"Were courts free to reexamine the wisdom of plea bargains with the benefit of hindsight, the agreements themselves would lack finality and the benefits that encourage the government and defendants to enter into pleas might prove illusory[.]" (*United States v. Ritsema* (7th Cir. 1996) 89 F.3d 392, 401.) Indeed, no plea bargain would ever truly be secure if trial courts were allowed to rescind them after they have been accepted and executed. (*V.C. v. Superior Court* (2009) 173 Cal.App.4th 1455, 1467, disapproved on other grounds in *In re Greg F.* (2012) 55 Cal.4th 393, 415.) "Only if it is generally believed that performance on the part of the [s]tate will not disappoint a defendant's reasonable expectations will plea bargaining . . . remain a truly effective device in criminal administration." (*State v. Thomas, supra*, 294 A.2d at p. 61.)

19

Moreover, "to allow the state to revoke plea agreements through negligence on the part of the district attorney's office might well encourage such negligence. Requiring the district attorney to know the pertinent facts in a given case before entering a plea bargain will prevent such negligence and will ensure fairness to both the [s]tate and the defendant." (*Ex parte Johnson, supra,* 669 So.2d at p. 207.) In this regard, we must remember plea bargaining implicates more than just the liberty of the defendant; at stake is the very honor of the government, the integrity of the judicial process, and the public's confidence in the fair administration of justice. (*People v. Walker* (1991) 54 Cal.3d 1013, 1026; *People v. Mancheno, supra*, 32 Cal.3d at p. 866; *People v. Vargas* (2001) 91 Cal.App.4th 506, 534.)

These considerations underscore why courts often feel compelled to hold prosecutors to their plea agreement promises. Doing so in this case may seem harsh, given that Patel simply made an innocent, good-faith mistake in the midst of a busy courtroom setting. But if the shoe were on the other foot, and petitioner himself had made a mistake about what the police report contained, we would not hesitate to enforce the plea agreement in that situation either. The truth is, "defendants are rarely released from their agreements, despite the fact that the plea bargain has turned out not to be such a bargain after all. [Citation.]" (*United States v. Ritsema, supra,* 89 F.3d at p. 401; see, e.g., *Machado v. Carey* (E.D.Cal. 2006) 2006 WL 3762046 [defendant's subjective misunderstanding of potential prison term insufficient to justify rescission of plea agreement based on mistake of fact].) There is no reason in logic or the law to afford prosecutors preferential treatment when it comes to determining the enforceability of plea agreements that are allegedly based on mistake of fact.

In arguing for rescission of the plea agreement in this case, the People also claim the sentencing court failed to make the necessary findings to ensure petitioner is subject to the sex offender registration requirements set forth in Penal Code section 290 et seq. However, the People did not raise this claim at the time petitioner entered his

20

misdemeanor plea, nor did they try to attack the plea on that basis before filing the subject felony charges against petitioner. The alleged oversight is therefore not grounds for overturning petitioner's plea bargain at this stage of the proceedings. (See *Ellsworth v. Superior Court* (1985) 170 Cal.App.3d 967, 974.)

In *Ellsworth*, this court recited an adage that is apt here as well: "'If the People had their pockets picked in [this] criminal case, it was because they neglected to button down the flaps.' [Citation.]" (*Ellsworth v. Superior Court, supra,* 170 Cal.App.3d at p. 974.) Not only were the People remiss for failing to raise any deficiencies in the plea below, they were neglectful on a more fundamental level for failing to heed the "old saying" that "'[b]efore a prosecutor disposes of his [or her] case, he [or she] should know as much about the case as is possible so that he [or she] will be informed about the case[.]'" (*Perkins v. Third District Court of Appeals, supra,* 738 S.W.2d at p. 277.) These miscues have resulted in the consumption of considerable judicial resources and left us with a vexing dilemma that pits the right of the state to carry out its fundamental duty to prosecute alleged criminal activity against the right of criminal defendants to expect fundamental fairness in plea proceedings.

As much as it pains us to reach a conclusion that results in the dismissal of felony child molestation charges against petitioner, we feel the People have left us no choice in the matter. In order to preserve the fairness and integrity of the plea bargaining process, the process by which the vast majority of criminal cases are adjudicated in this day and age (see *Lafler v. Cooper* (2012) __ U.S. __ [132 S.Ct. 1376, 1381] [recognizing the criminal justice system "is for the most part a system of pleas, not a system of trials"]), we are compelled to hold the People to the promises they made as part of petitioner's plea bargain in his misdemeanor case. Because the People agreed to refrain from prosecuting petitioner for all incidents referenced in the police report in that case, and because that police report clearly and specifically refers to the conduct underlying the felony charges petitioner is currently facing, those charges cannot stand.

21

## DISPOSITION

The petition for a writ of mandate is granted and the trial court is ordered to vacate its order granting the People's motion to rescind the plea agreement in case number 12HM10360 and to reinstate petitioner's guilty plea to the misdemeanors charges alleged in that case.  For the reasons explained above, reinstatement of petitioner's guilty plea in that case precludes the prosecution from pursuing the felony charges alleged against him in case number 12HF2926.


BEDSWORTH, J.

I CONCUR:


O'LEARY, P. J.

22

Moore, J., Dissenting.

I respectfully dissent. I actually agree with most of what the majority says, but I draw different conclusions from the facts.

This is what happened. In a busy misdemeanor arraignment court, the prosecutor and defense lawyer agreed to the disposition of a case where defendant was using his cell phone to look up women's skirts. The two lawyers agreed defendant would plead guilty in exchange for three years' probation. While memorializing the agreement in a writing, the defense lawyer added an additional term, that defendant's guilty plea would "resolve[] all incidents referenced in [the] police report, charged & uncharged."

To a great extent, what happened next is a he said /she said situation. He is the defense lawyer and she is the prosecutor. She said she asked him what the additional term was about, and he told her the other incidents involved "similar stuff." The prosecutor then perused the police report, which was actually four reports, found "similar stuff" throughout the four reports and agreed to the additional term. Defendant pled guilty and the judge sentenced him according to the agreement.

What the prosecutor did not read in her perusal of the police reports was a police officer's statement that defendant was a person of interest in the inappropriate touching of two 12-year-old girls. Shortly after defendant was sentenced, the prosecutor was contacted by police and told the police department was ready to file against defendant for molesting the two girls. A felony complaint alleging defendant committed two counts of forcible child molestation was filed. (Pen. Code, § 288, subd. (b)(1).)

Defendant made a motion to have the felony complaint dismissed. In denying the motion to dismiss, the judge made a finding there was no fraud on

1

the defense lawyer's part when he answered the prosecutor's questions about the new term he added to the plea agreement in the underlying case. A reviewing court must defer to factual findings. (*People v. Cissna* (2010) 182 Cal.App.4th 1105, 1118.) Assuming there was no fraud, both looking up women's skirts and felony child molestation are both sexual crimes, and might be described by some as "similar stuff."

Why the prosecutor did not read the police reports more carefully is not at issue here. Nor is the defense lawyer's reason for doing what he did, although his actions may be understandable. He was between the rock and the hard spot to a certain extent. If he brought the notation in the fourth police report about the 12-year-old girls to the attention of the prosecutor, he might inadvertently cause his client to be further prosecuted. Yet at the same time, he wanted to wrap up everything, if possible.

What is at issue here is that, unlike the typical private contract, which is insulated from judicial interference because it's nobody's business to what terms private parties agree (see *Brisbane Lodging, L.P. v. Webcor Builders, Inc.* (2013) 216 Cal.App.4th 1249, 1263 [contract involving "sophisticated give-and-take" over terms of contract should not be interfered with by the courts], this particular contract *is* somebody's business. It's the People's business. Even though it doesn't matter why both counsel acted as they did, as a result of their actions, charges are being dismissed against a sexual deviant who may be in the process of escalating his crimes, having graduated from looking up women's skirts to forcible child molestation. It is in the public interest to determine whether that portion of the plea agreement dealing with foreclosing further prosecution should be rescinded under contract principles or whether the plea agreement should be

2

enforced despite a mistake of fact, and the forcible child molestation charges should be dismissed.

There are four requirements to rescission. The party seeking rescission must demonstrate that "(1) [she] made a mistake regarding a basic assumption upon which [she] made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to [her]; (3) [she] does not bear the risk of the mistake; and (4) the effect of the mistake . . . would be unconscionable." (*Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 282.) As the majority notes, the parties agree the first two elements are present. (Maj. opn., *ante*, at p. 10.) Unlike the majority, I find the prosecutor does not bear the assumption of the risk here.

A party bears the assumption of the risk of her mistake if "'[s]he is aware, at the time the contract is made, that [s]he has only limited knowledge with respect to the facts to which the mistake relates but treats [her] limited knowledge as sufficient . . . .'" (*Donovan v. RRL Corp.*, *supra*, 26 Cal.4th at p. 283.) In this case, it cannot be said the prosecutor bore the risk of making a bad contract because she knew she had limited knowledge. She "knew" no such thing. She perused the four police reports and felt assured they contained nothing but "up the skirt stuff." That is what she was looking for, and that is what she found.

*Unconscionability in General*

The principles of unconscionability involve both a substantive and a procedural element, the former focusing or overly harsh or one-sided results and the latter on oppression or surprise. (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071.) The ultimate question of whether or not a contract is unconscionable

3

is a question of law.  (*A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 489.)

*Substantive Unconscionability*

"The substantive element of the unconscionability analysis focuses on overly harsh or one-sided results.  [Citation.]"  (*Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 586.)  "No precise definition of substantive unconscionability can be proffered.  Cases have talked in terms of 'overly harsh' or 'one-sided' results.  [Citations.]  One commentator has pointed out, however, that '. . . unconscionability turns not only on a "one-sided" result, but also on an absence of "justification" for it.'  [Citation], which is only to say that substantive unconscionability must be evaluated as of the time the contract was made.  [Citation.]  The most detailed and specific commentaries observe that a contract is largely an allocation of risks between the parties, and therefore that a contractual term is substantively suspect if it reallocates the risks of the bargain in an objectively unreasonable or unexpected manner.  [Citations.]"  (*A & M Produce Co. v. FMC Corp.*, *supra*, 135 Cal.App.3d at p. 487.)

A provision in a contract is substantively unconscionable if it "'involves contract terms that are so one-sided as to "shock the conscience," or that impose harsh or oppressive terms.'  [Citation.]  The phrases 'harsh,' 'oppressive,' and 'shock the conscience' are not synonymous with 'unreasonable.'  Basing an unconscionability determination on the reasonableness of a contract provision would inject an inappropriate level of judicial subjectivity into the analysis.  'With a concept as nebulous as "unconscionability" it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms

4

are unreasonable.  The terms must shock the conscience.'  [Citations.]"  (*Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1322-1323.)

As already noted, I must defer to the trial judge's determination there was no fraud in the inducement here.  Nonetheless, even if the defense lawyer did not *intend* to mislead the prosecutor, it is clear to me the prosecutor was, indeed, misled into believing the only crimes involved were "up the skirt stuff," as she says she was told or led to believe.  She found "up the skirt stuff" throughout the police reports, but did not see the references to inappropriate touching of two 12-year-old girls.  Under the circumstances I find in this record, I must conclude the term added by the defense lawyer is harsh, oppressive, one-sided in favor of defendant and shocks the conscience.

*Procedural Unconscionability*

The procedural element of the unconscionability analysis concerns the manner in which the contract was negotiated and the circumstances of the parties at the time.  It focuses on oppression or surprise.  (*Walnut Producers of California v. Diamond Foods, Inc.* (2010) 187 Cal.App.4th 634, 646.)  Oppression may not apply here, but surprise does.  Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the contract by the party seeking to enforce the disputed terms.  (*Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 581.)

I do not suggest the prosecutor should have been surprised, but surprised she was.  She had been told to expect nothing in the police report but "similar stuff," so when she saw "similar stuff" throughout, her expectations were met.  But the added contractual term had ramifications she never suspected.

5

No doubt the substantive unconconscionability element here is greater than the procedural unconscionability element, but the law recognizes a sliding scale with regard to substantive and procedural unconscionability. "[T]he greater the degree of substantive unconscionability, the less the degree of procedural unconscionability . . . is required to annul a contract or clause. [Citations.]" (*Carboni v. Arrospide* (1991) 2 Cal.App.4th 76, 83, fn. omitted.) In *Carboni*, the reviewing court had little trouble finding a 200 percent interest rate charged on funds borrowed to pay for medical bills was substantively unconscionable, but struggled with whether there was procedural unconscionability in light of an argument the borrower had other sources of credit. (*Id.* at pp. 84, 86.) The court concluded: "Finally, we note that even if the procedural aspect of unconscionability in this case was slight, the substantive unconscionability was severe. A compelling showing of substantive unconscionability may overcome a weaker showing of procedural unconscionability. [Citation.]" (*Id.* at p. 86.)

*Conclusion*

This is not a situation where the district attorney is trying to back out of a deal it made because circumstances have changed. Neither is this a situation where the case was assigned to a deputy district attorney for trial, in which case we could easily presume the trial lawyer was fully aware of the contents of the file before making an offer. Rather, this case involves a perfect storm. The plea agreement was made at the misdemeanor arraignment stage, the safety of children is at stake, and the People's lawyer did not read all of the police reports, missing the significance of the term added by the defense lawyer. Thus, at the time the contract was entered, the possible effect that a felonious child molester, who

6

would ordinarily face a long prison term, would avoid prosecution, was not even considered. Under the circumstances in this record, I find that added term to be both substantively and procedurally unconscionable. The unconscionable term can easily be severed from the agreement.

"As noted, Civil Code section 1670.5, subdivision (a) provides that '[i]f the court as a matter of law finds the contract or any clause of the contract to have been *unconscionable at the time it was made* the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.'" (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 121-122.) (Italics added.)

I think the trial court's ruling was correct for the most part. The added term to the plea agreement here shocks the conscience, and I do not think we should enforce it. The prosecution of defendant for forcible child molestation should proceed without interference by this court.

I disagree, however, with the remedy applied by the trial court. The court withdrew defendant's guilty plea in the misdemeanor matter. Whether the guilty plea should be withdrawn or whether the plea should remain, with the unconscionable provision severed, should be defendant's option. After all, the prosecutor offered the defendant the no time disposition prior to defense counsel's including the unconscionable provision.

MOORE, J.

7