CALLAHAN, Circuit Judge,
with whom O’SCANNLAIN, TALLMAN, BYBEE, BEA, M. SMITH, and IKUTA, Circuit Judges, join, dissenting from the denial of rehearing en banc:
For the second time in roughly as many weeks, we invite summary reversal by the Supreme Court in a state court habeas case.[1] The three-judge panel decision here is not based on clearly established federal law, as the Supreme Court has never held that the Due Process Clause precludes post-plea, pre-judgment amendments to a complaint. Nor has the Supreme Court ever ordered the reinstatement of an alleged plea agreement that was not in effect at the time judgment was entered. Such an exercise of raw federal judiciary power, though, is exactly what the Antiter-rorism and Effective Death Penalty Act (“AEDPA”), 28 U.S.C. § 2254, prohibits. I respectfully dissent from our refusal to rehear this case en banc.
I. BACKGROUND
On October 14, 2005, Michael Cuero' (“Cuero”) crashed his vehicle into Jeffrey Feldman, who was standing on the side of the road next to his parked pickup truck. At the time, Cuero did not have a valid driver’s license, was under the influence of methamphetamine, and was on active parole for prior drug violations. Although the record is silent as to the injuries Cuero sustained from the crash, he maintained the wherewithal and physical ability to dispose of the 9mm semiautomatic pistol that he, as a felon, was unlawfully possessing. Feldman, on the other hand, was not so fortunate. He had to be airlifted to the nearest trauma center, where he immediately underwent emergency surgery and was put on life support. Among other things, Feldman suffered a severe brain injury, fractures to all the bones in his face, and a ruptured spleen. Feldman’s prognosis was grim and his treating physicians believed he would never be able to work again.
A few days after the crash, the People filed its initial criminal complaint against *1027 Cuero. On October 28, 2005, the People filed an amended criminal complaint, alleging that Cuero: (1) inflicted serious bodily injury to Feldman while driving under the influence of alcohol or drugs and that he did so within ten years of a driving under the influence conviction, a felony; (2) possessed a firearm as a felon, a felony; and (3) was under the influence of a controlled substance, a misdemeanor. The People also alleged that Cuero had served four prior prison terms[2] and that one of his prior convictions — for residential burglary — constituted a strike.
On December 8, 2005, Cuero pleaded guilty to inflicting serious bodily injury while driving under the influence and to unlawful possession of a firearm. Additionally, Cuero admitted that he had served four prior prison terms and that his residential burglary conviction was a strike. Following Cuero’s plea, the Superior Court granted the People’s motion to dismiss the remaining misdemeanor count. In light of his pleas and admissions, Cuero’s maximum punitive exposure was 14 years, 4 months. It is not clear whether Cuero’s plea was based on an agreement with the People; there is evidence that it was not.[3] There is no evidence, though, that the People agreed to recommend a particular sentence or to waive its ability to later amend the complaint to add a charge or strike.
In preparing the sentencing memorandum and upon further investigation, the prosecuting attorney discovered that Cue-ro had two additional serious felony convictions and an assault-with-a-deadly-weapon conviction that constituted yet another strike.[4] On January 11, 2006, pursuant to California Penal Code section 969.5,[5] the People filed a motion to amend the criminal complaint to add the two serious felony convictions and allege that Cuero’s assault-with-a-deadly weapon conviction was an additional strike.[6] Cuero challenged the amendment, arguing that the Superior Court, exercising the discretion afforded to it by California Penal Code section 969.5, should deny the request because it was *1028 untimely and would prejudice him. However, Cuero did not contend that the requested amendment violated the Due Process Clause or California contract law.
Following a hearing on February 2, the Superior Court granted the People’s request. The Superior Court based its decision on section 969.5’s language and its belief that existing case law demonstrated that an increase in exposure due to an amendment does not impact a defendant’s substantial rights. After announcing its decision, the Superior Court asked Cuero if he wished to withdraw his plea. Cuero responded by requesting time to make his determination, which the Superior Court afforded him. Thereafter, the People filed a second amended complaint, which raised Cuero’s possible exposure to a sentence of 64 years to life.
Sometime during the next month and a half, Cuero reached an agreement with the People. In exchange for Cuero pleading guilty to inflicting great bodily injury to Feldman while driving under the influence of a drug and admitting the alleged two prior strikes, the People agreed to withdraw the second amended complaint and charge Cuero with only inflicting great bodily injury to Feldman while driving under the influence of a drug and having two prior strikes, which had the effect of dramatically reducing Cuero’s exposure.
At the change-of-plea hearing held on March 27, 2006, the People filed a third amended complaint (“TAC”) reflecting these changes. Cuero withdrew his previous guilty plea and pleaded guilty to the TAC’s single charge. Cuero also admitted to the two prior strikes contained in the TAC and stipulated to a 25-years-to-life sentence.
The sentencing hearing was held on April 20, 2006. At no point leading up to it did Cuero attempt to withdraw from his plea or ask the Superior Court to exercise its discretion and sentence him to less than 25 years to life, which he could have done.[7] The Superior Court sentenced Cuero to what it had said it would — 25 years to life.
On direct appeal, Cuero’s counsel filed a Wende brief[8] and asked the California Court of Appeal to review the record for error. Specifically, counsel directed the appellate court’s attention to the “possible but not arguable issue[ ]” of “whether the [People’s] amendment violated the terms of the earlier plea agreement in violation of due process.” The appellate court afforded Cuero the opportunity to file a separate brief, but Cuero chose not to do so. After “reviewing] the entire record,” on March 21, 2007, the Court of Appeal found that there was “no reasonably arguable appellate issue” and affirmed the Superior Court.
Thereafter, Cuero petitioned for habeas relief in the Superior Court, California Court of Appeal, and California Supreme Court, all of which denied Cuero’s request for relief. Cuero then filed a federal habeas petition in the District Court, which was also denied and serves as the basis for this appeal.
II. DISCUSSION
A federal habeas petition challenging state custody shall be denied “unless the [state court’s] adjudication of the claim[] *1029 resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1) (emphasis added). “A decision is ‘contrary to’ Supreme Court precedent where ‘the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.’ ” Jones v. Harrington, 829 F.3d 1128, 1135 (9th Cir. 2016) (alterations in original omitted) (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). “A state court unreasonably applies clearly established federal law if it ‘identifies the correct governing legal rule but unreasonably applies it to the facts of the particular state prisoner’s case.’ ” Id. (alterations in original omitted) (quoting White v. Woodall, — U.S. —, 134 S.Ct. 1697, 1705, 188 L.Ed.2d 698 (2014)). State court decisions are to be measured “against [the Supreme Court’s] precedents as of ‘the time the state court renders its decision.’ ” Greene v. Fisher, 565 U.S. 34, 132 S.Ct. 38, 44, 181 L.Ed.2d 336 (2011) (emphasis in original) (quoting Lockyer v. Andrade, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)).
The majority finds that the Superior Court’s approval of the People’s request to amend was both contrary to and an unreasonable application of clearly established law.[9] Cuero v. Cate, 827 F.3d 879, 883 (9th Cir. 2016). In reaching this erroneous conclusion, the majority goes beyond the scope of what Supreme Court precedent instructs. Rather than interpret “clearly established Federal law, as determined by the Supreme Court of the United States,” the majority gives the Due Process Clause an overbroad and unprecedented interpretation that intrudes upon the just and orderly administration of justice in California and other states within the Ninth Circuit.
A. The Superior Court’s approval of the People’s requested amendment was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.
First, the Supreme Court has never held that the Due Process Clause prevents a state prosecutor from amending a criminal complaint post-plea, pre-judgment. Second, California Penal Code sections 969.5, 1009, and 1192.5 specifically allow for post-plea amendments of complaints, and no California court has limited any of the section’s application to instances where a defendant pleaded without an agreement. Third, the Supreme Court has never held that specific performance is the only remedy for alleged violations of the Due Process Clause during the plea bargaining process or that federal appellate courts, as opposed to state courts, should fashion the remedy for any such violation. In fact, it has held the opposite.
1. Supreme Court precedent does not clearly establish that the People’s post-plea, prejudgment amendment implicates the Due Process Clause.
The majority claims that “a guilty plea seals the deal between the state and the defendant, and vests the defendant with a due process right to enforce the terms of his plea agreement.” Cuero, 827 F.3d at 885 (internal quotation marks omitted). But — as the majority’s citation of only *1030 three Ninth Circuit cases reveals — the Supreme Court has never applied the Due Process Clause to a plea agreement that was not in effect at the time judgment was entered.[10] Thus, even assuming that Cue-ro’s initial guilty plea was pursuant to a plea agreement, there is no basis to conclude that the Superior Court acted contrary to or unreasonably applied clearly established Supreme Court precedent by exercising its statutorily-based authority and approving the People’s request to amend the complaint. See, e.g., Lopez v. Smith, — U.S.—, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) (stating that precedent must address “the specific question presented by th[e] case”).
In its conclusion, the majority states that, “[b]y allowing the prosecution to breach the agreement, reneging on the promise that induced Cuero’s plea, the state court violated federal law clearly established by the Supreme Court in Santobello [v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) ].” Cuero, 827 F.3d at 891. However, Santobello is clearly .distinguishable. There, the defendant agreed to plead guilty in exchange for the government’s explicit promise not to make a sentence recommendation. 404 U.S. at 258, 92 S.Ct. 495. Following the Santobello defendant’s guilty plea, though, the government-violated the parties’ agreement by asking for the maximum possible sentence. Id. at 259, 92 S.Ct. 495. Significantly, unlike Cuero, the defendant in Santobello was never afforded the opportunity to back out of the parties’ agreement and withdraw his plea. Id. at 263, 92 S.Ct. 495. Therefore, at the time judgment was entered, the defendant in Santobello remained bound by the agreement he had reached with the government, despite the government’s breach. Santobello thus does not address the specific question in this case — does the Due Process Clause apply to an alleged plea agreement that is withdrawn before judgment is entered — and therefore cannot serve as a basis for habe-as relief. See Lopez, 135 S.Ct. at 4.
Mabry v. Johnson, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), overruled in part by Puckett v. United States, 556 U.S. 129, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009), also cannot serve as a basis for habeas relief. There, the Supreme Court stated:
A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent’s liberty at issue here.
467 U.S. at 507-08, 104 S.Ct. 2543 (emphasis added) (footnote omitted). Mabry thus identifies two points at which due process rights may possibly attach in this context: (1) the entry of a plea, or (2) the entry of judgment. Notably, though, Mabry did not actually decide the issue because the government had withdrawn the plea agreement the defendant sought to enforce before the defendant entered a plea pursuant to it. Id. at 506, 104 S.Ct. 2543.
*1031 In the thirty-plus years since Mabry, the Supreme Court has not addressed the Due Process Clause’s application to a prejudgment plea agreement. As a result, the “precise contours” of a defendant’s due process rights in the plea agreement context “remain unclear.” White, 134 S.Ct. at 1705 (quoting Lockyer, 538 U.S. at 75-76, 123 S.Ct. 1166). Therefore, at an absolute minimum, reasonable minds could disagree about whether the Due Process Clause covers pre-judgment plea agreements, particularly those that have been withdrawn or are not in effect at the time of judgment. See, e.g., Harrington v. Richter, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (“A state court’s determination that a claim lacks merit precludes habeas relief so long as ‘fairminded jurists could disagree’ on the correctness of the state court’s decision.” (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004))).
Contrary to- the majority’s indication, there is a significant difference between the entry of a guilty plea and the entry of judgment. Far from a perfunctory step, the entry of judgment constitutes a significant milestone in a prosecution. Among other possible things, the entry of judgment dramatically reduces a defendant’s ability to withdraw his guilty plea and exercise his constitutional right to trial. See Cal. Penal Code § 1018.[11] In short, the entry of judgment provides a finality that does not exist when a defendant simply offers to plead. Until judgment is entered, the defendant may withdraw his plea or the trial judge may withdraw approval. This distinction further confirms the reasonableness of the belief that the Due Process Clause attaches only after judgment is entered.
Under California law, “[i]n a criminal case, judgment is rendered when the trial court orally pronounces sentence.” People v. Karaman, 4 Cal.4th 335, 344 n.9, 14 Cal.Rptr.2d 801, 842 P.2d 100 (1992); accord People v. Mendoza, 171 Cal.App.4th 1142, 1150, 90 Cal.Rptr.3d 315 (2009). Therefore, while a guilty plea is certainly a stop along the path to a judgment, it is not the final destination, as it does not include a sentence pronouncement. See, e.g., Cal. Penal Code § 1191 (stating that, “in a felony ease, after a plea, ... the court shall appoint a time for pronouncing judgment”). Here, it is undisputed that, at the time the People sought and received permission to amend its complaint, no sentence had been announced, and, thus, no judgment had been entered. As a result, even if there was an initial plea agreement and the People’s amendment violated it, a reasonable judge could find that the state courts here did not act contrary to, or unreasonably apply, clearly established federal law by allowing the amendment because no Supreme Court case has applied the Due Process Clause to a situation like the one presented here.
The fact that the Superior Court or California Court of Appeal might have extended the Due Process Clause to cover Cuero’s alleged initial plea agreement does not mean that their failure to do so amounts to an unreasonable application of federal law. See, e.g., White, 134 S.Ct. at 1706 (stating that AEDPA “does not require state courts to extend [the Supreme Court’s] precedent or license federal courts to treat the failure to do so as error”). Simply put, Supreme Court precedent does not “squarely establish[]” that the Due Process Clause applies to prejudgment plea agreements. Id. Therefore, *1032 it is not “so obvious that a clearly established rule applies to [this ease] that there could be no fairminded disagreement on the question,” as is needed for relief under AEDPA. Id. at 1706-07 (internal quotation marks omitted).
2. The People’s post-plea, pre-judgment amendment to the criminal complaint did not violate the Due Process Clause.
Assuming, arguendo, that there was an initial plea agreement and that the Due Process Clause applied to it, there is no due process violation. “[T]he construction of [a] plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law.” Ricketts v. Adamson, 483 U.S. 1, 5 n.3, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). To reiterate, California Penal Code section 969.5(a) states, in relevant part:
Whenever it shall be discovered that a pending complaint to which a plea of guilty has been made under Section 859a does not charge all prior felonies of which the defendant has been convicted either in this state or elsewhere, the complaint may be forthwith amended to charge the prior conviction or convictions and the amendments may and shall be made upon order of the court.[12]
Additionally, California Penal Code section 1009 declares that the trial court “may order or permit an amendment of an indictment, accusation or information, or the filing of an amended complaint, for any defect or insufficiency, at any stage of the proceedings.” Also, California Penal Code section 1192.5 provides that, following a defendant’s guilty plea, a trial court retains the ability to “withdraw its approval [of the plea] in light of further consideration of the matter.” Prior to pleading, a defendant is made aware of this ability. See Cal. Penal Code § 1192.5.
No California state court has held that sections 969.5,1009, and 1192.5 are inapplicable in cases where „a defendant pleads pursuant to a plea agreement reached with the People. See People v. Lettice, 221 Cal.App.4th 139, 150 n.12, 163 Cal.Rptr.3d 862 (2013) (“Neither the [People v. Valladoli, 13 Cal.4th 590, 54 Cal.Rptr.2d 695, 918 P.2d 999 (1996),] court, nor any other court of which we are aware, has considered whether the People may file an amended information after having entered into a plea agreement to resolve the case.”). Therefore, based on the sections’ plain language, a complaint may be amended post plea if the People seek and receive approval from the trial court to do so. Cf. People v. Superior Court (Alvarado), 207 Cal.App.3d 464, 478, 255 Cal.Rptr. 46 (1989) (noting that trial courts have the discretion to amend a complaint to “allege a prior felony conviction after a guilty plea has been entered by the accused [under section 969.5]”).
Here, California’s amendment process was followed: the People filed a motion to amend, the Superior Court held a hearing *1033 on the motion, and, after determining that the requested amendment would not unfairly prejudice Cuero’s substantial rights, the Superior Court granted the People’s request and an amended complaint was filed. Furthermore, the Superior Court allowed Cuero to withdraw his initial plea, which was purportedly based on an earlier plea agreement. As a result, the People’s amendment is consistent with state law and did not violate the Due Process Clause.
Recognizing that California criminal procedure law cannot get them to where they want to go, the majority shifts its focus to California contract law. See Cuero, 827 F.3d at 885-91. However, the majority’s reliance on this body of law is misplaced for two reasons: first, the Supreme Court has never construed the phrase “matters of state law” to mean just “matters of state contract law”; and second, even if it had, in this case, the Superior Court’s approval of the People’s request to amend is not clearly inconsistent with that body of law.[13]
i. The Supreme Court has never said that “matters of state law” means “matters of state contract law,” thus, the Superior Court was not bound to apply woodenly California contract law.
The majority takes the Superior Court to task for not explicitly discussing the interplay between the California Penal Code and California contract law. Id. at 889-90. But why would it? Cuero did not raise any arguments under California contract law and neither the Supreme Court nor the California appellate courts have required its consideration. It is true that a number of cases have stated that California contract law generally applies to plea agreements. See id. at 888 (collecting cases). “Generally speaking,” though, has no place in the AEDPA lexicon. See, e.g., Lopez, 135 S.Ct. at 4 (“We have before cautioned the lower courts — and the Ninth Circuit in particular — against ‘framing our precedents at such a high level of generality.’ ” (quoting Nevada v. Jackson, — U.S. —, 133 S.Ct. 1990, 1994, 186 L.Ed.2d 62 (2013) (per curiam))). The precedent relied upon under AEDPA must address “the specific question presented by this case,” id. which here is: does state contract law eliminate a prosecutor’s statutory ability to amend a criminal complaint after a defendant has allegedly pleaded pursuant to a plea agreement, but before judgment has been entered. No Supreme Court or California appellate court precedent answers this question.
Undeterred, the majority turns to our own precedent, specifically, Davis v. Woodford, 446 F.3d 957 (9th Cir. 2006), and Buckley v. Terhune, 441 F.3d 688 (9th Cir. 2006) (en banc). See Cuero, 827 F.3d at 888-89. But Davis and Buckley were decided after the Superior Court approved the People’s amendment and are not Supreme Court opinions. As the Supreme Court has made clear, “[cjircuit precedent cannot ‘refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced.’ ” Lopez, 135 S.Ct. at 4 (quoting Marshall v. Rodgers, — U.S. —, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013) (per curiam)). Thus, the Superior Court was not bound to apply woodenly state contract law, but rather, as Ricketts instructs, could consider any relevant state law. Ricketts, 483 U.S. at 5 n.3, 107 S.Ct. 2680.
*1034 The Superior Court’s approval of the People’s request to amend is consistent with state law. First, the language in sections 969.5, 1009, and 1192.5 is broad and neither the California Supreme Court nor the California Court of Appeal has narrowed it. Second, existing California law evinces a strong desire that repeat felony-offenders receive “longer prison sentences and greater punishment.” Cal. Penal Code § 667(b). Third, California law strongly disfavors prosecutors dismissing or not charging all of a defendant’s strikes, allowing for such action to occur only when it is “in the furtherance of justice” or when there is insufficient evidence to prove the strike. See Cal. Penal Code § 667(f)(1).[14]
In light of sections 969.5, 1009, and 1192.5, California contract law is not controlling. Again, no California case has ever held that state contract law limits the application of sections 969.5, 1009, and 1192.5, Furthermore, to the extent sections 969.5, 1009, and 1192.5 are inconsistent with state contract law in allowing the People to amend the complaint, those statutory provisions should govern because they speak more directly to the situation faced by the Superior Court. See, e.g., RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 132 S.Ct. 2065, 2071, 182 L.Ed.2d 967 (2012) (“It is a commonplace of statutory construction that the specific governs the general.” (alteration in original omitted) (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992))); Morton v. Mancari, 417 U.S. 535, 550-51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) (“Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.”).
ii. Even if state contract law had a role to play in the analysis, a reasonable judge could conclude that the People’s amendment was permissible.
Although not stated, it is clear that the majority essentially viewed the People’s amendment as a rescission of the alleged initial plea agreement. Under California law, a party to a contract may rescind a contract if the party’s consent was given by mistake.[15] See Cal. Civ. Code § 1689(b)(1). To claim rescission, the mistaken party must show that:
(1) [he] made a mistake regarding a basic assumption upon which [he] made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to [him]; (3) [he] does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable.
*1035 Donovan v. RRL Corp., 26 Cal.4th 261, 282, 109 Cal.Rptr.2d 807, 27 P.3d 702 (2001). Here, there is no doubt that the People would not have entered into the alleged initial plea agreement with Cuero had it known that a second prior conviction constituted a strike. Further, if the People’s mistake remained uncorrected, Cuero would have received a windfall — 14 years rather than facing a maximum of 64 years to life. Therefore, factors one and two are clearly satisfied.
A reasonable judge could also conclude factors three and four were satisfied. As recently noted by the California Court of Appeal in Amin v. Superior Court, 237 Cal.App.4th 1392, 1405, 188 Cal.Rptr.3d 870 (2015), “there is a dearth of cases in California” regarding whether a plea agreement is rescindable due to a prosecutor’s unilateral mistake. While the majority in Amin concluded that the People failed to establish that factors three and four were satisfied, see 237 Cal.App.4th at 1400-07, 188 Cal.Rptr.3d 870, the dissent disagreed, id. at 1411-15, 188 Cal.Rptr.3d 870. For purposes of Cuero’s appeal, Amin is significant for two reasons. First, it shows that, even as of 2015, California courts had not conclusively decided how mistake-of-fact rescission applied in the plea agreement context. Second, the disagreement between the majority and dissent demonstrates that reasonable judges could disagree about the issue, even years after the conclusion of Cuero’s state court proceedings. Thus, the state courts here could have reasonably found that the alleged initial plea agreement could be rescinded.
' Despite the majority’s intimation to the contrary, the alleged rescission in this case did not occur past the point of no return. The People could still be disgorged of the benefit received — Cuero’s waiver of his right to trial — and the proverbial “coin” Cuero had paid could be refunded to him in full. Stated differently, the initial plea could be unwound and the parties returned to the exact same position they occupied prior to the plea being entered, as the prosecutor had argued at the hearing on the motion to amend. Thus, this case is unlike those where a defendant, pursuant to a plea agreement, testifies against another at trial or cooperates with law enforcement in some meaningful way. As a result, a reasonable judge could conclude that the alleged rescission here was permissible. See, e.g., NMSBPCSLDHB v. County of Fresno, 152 Cal.App.4th 954, 959-60, 61 Cal.Rptr.3d 425 (2007) (stating that rescission “requir[es] each [party] to return whatever consideration has been received” (quoting Imperial Cas. & Indem. Co. v. Sogomonian, 198 Cal.App.3d 169, 184, 243 Cal.Rptr. 639 (1988))).
3. Even if Cuero’s due process rights were violated, Supreme Court precedent does not require specific performance.
The majority concludes that the “Superi- or Court also unreasonably applied clearly established federal law by failing to order specific performance of Cuero’s [initial] plea agreement.” Cuero, 827 F.3d at 890. Again, this conclusion finds no support in existing Supreme Court precedent. In fact, it is clearly inconsistent with the Supreme Court’s declaration that the decision of whether to grant a defendant specific performance or to allow him to withdraw from his plea is a decision best left to the “discretion of the state .court, which is in a better position to decide [what relief is warranted].” Santobello, 404 U.S. at 263, 92 S.Ct. 495.
In addition to being wrong on the law, the majority ignores the fact that allowing Cuero to withdraw his plea placed him in'. the exact same position he was in prior to *1036 entering into the alleged initial plea agreement, which distinguishes this case from those cited by the majority. See Cuero, 827 F.3d at 890-91.[16] California contract law merely requires that the non-breaching party be made whole. Here, pursuant to the alleged initial plea agreement, Cuero gave up his right to trial, but he received that right back when the Superior Court approved the People’s request to amend.
It is true that Cuero was deprived of receiving an unlawfully generous sentence, but this is of no moment. California law did not clearly establish that, under these circumstances, a defendant is entitled to re-acquire something he should have never gotten in the first place; instead, it indicated just the opposite. See Alvarado, 207 Cal.App.3d at 477, 255 Cal.Rptr. 46 (“Although probation ineligibility is prejudicial in the sense that Alvarado would rather it not be alleged, the allegation here does not cause prejudice to Alvarado’s substantial rights. In fact, the amendment merely places Alvarado in the position he should have been in at the time of his arraignment in municipal court had he not used an alias and entered an immediate guilty plea under section 859a.”). A reasonable judge might well conclude that the appropriate remedy in this case was to allow Cuero to withdraw from his initial plea rather than order the People to perform specifically the alleged initial plea agreement.
In sum, following the People’s motion to amend the complaint, the Superior Court held a hearing, considered Cuero’s opposition to the motion, and, exercising its statutorily given authority, determined that the People’s motion should be granted. Further, after making this determination, the Superior Court afforded Cuero the opportunity to withdraw from his plea, of which he took advantage. Nothing in this sequence of events is inconsistent with state law or established Supreme Court precedent. As a result, there is no due process violation, the Superior Court did not err, and Cuero is not entitled to habe-as relief.
B. The majority’s opinion intrudes upon the just and orderly administration of justice in California and possibly other states within the Ninth Circuit.
“It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government, and that [federal courts] should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States.” Medina v. California, 505 U.S. 437, 445, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (citation omitted) (quoting Patterson v. New York, 432 U.S. 197, 201, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)). Accordingly, federal courts may use the Due Process Clause to override a state’s prescribed criminal procedure only when the procedure “offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.” Id. (quoting Patterson, 432 U.S. at 202, 97 S.Ct. 2319).
Today, plea agreements play an instrumental part in our criminal justice system. See Santobello, 404 U.S. at 261, 92 S.Ct. 495; see also Missouri v. Frye, 566 U.S. *1037 133, 132 S.Ct. 1399, 1407, 182 L.Ed.2d 379 (2012) (“Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas.”). The majority appears blind to the practical implications of its ruling. Due to speedy trial concerns, as well as others, plea negotiations often begin immediately and a prosecutor may have less-than-complete or unclear information. In hopes of covering his sordid record, a defendant may use an alias or be less than forthcoming about his criminal history. Further, reports from the FBI, state and local law enforcement authorities, and presentence investigators may not be available. Cf. Thompson v. Superior Court, 91 Cal.App.4th 144, 156, 110 Cal.Rptr.2d 89 (2001) (“At the time of the preliminary hearing, the defendant’s prior convictions may not be fully known to the People, especially if the defendant has used one or more aliases, or has suffered convictions in other states.”). As a result, mistakes are bound to occur. Though we undoubtedly want state prosecutors to follow through with agreements they enter into, we should not impede their need to revive those agreements upon the discovery of additional information unless and until the Supreme Court clearly establishes that we may do so in the specific circumstances here. See Medina, 505 U.S. at 445, 112 S.Ct. 2572; see also Mabry, 467 U.S. at 511, 104 S.Ct. 2543 (“The Due Process Clause is not a code of ethics for prosecutors!.]”).
The majority’s ruling substantially interferes with California’s criminal justice system. California law requires prosecutors to charge a defendant’s prior serious and violent felonies, i.e., strikes. Without the safety valve created by California Penal Code sections 969.5, 1009, and 1192.5, prosecutors will be forced to choose between (a) pressing ahead with imperfect information and risk potentially violating California law and (b) refusing to negotiate until complete information is received, potentially freeing dangerous individuals and taking to trial, cases they otherwise would not. While Supreme Court precedent sometimes creates Hobson-like choices for law enforcement personnel, it has not done so in this particular context and one should not be foisted onto prosecutors within the Ninth Circuit.
III. CONCLUSION
If past behavior is any indication of future behavior, Michael Cuero is well on his way to serving a life sentence on an installment plan. Unfortunately, each new installment likely means that Cuero has victimized yet another person whose life, like Jeffrey Feldman’s, will never be the same. The true injustice here is that Cuero will not have to serve the sentence that the Superior Court legally imposed. In failing to follow the Supreme Court’s direction to defer to the state court’s reasonable determination, the majority has not only deprived Jeffrey Feldman and his family of the justice to which they are entitled, but has also stripped California of a tool used to ensure that criminal defendants receive sentences that are commensurate with all of the offenses they have committed. Such meddling by a federal court in a state’s criminal justice process should only occur when required by clearly established Supreme Court precedent. Because no such precedent exists here, I respectfully dissent from our refusal to rehear this case en banc. ■

. The other case we refused to rehear en banc was Hardy v. Chappell, 832 F.3d 1128 (9th Cir. 2016), reh’g en banc denied, 849 F.3d 803, 2016 WL 8114990 (9th Cir. 2016).

. For each prior prison term, an additional one-year, consecutive prison term is added. See Cal. Penal Code § 667.5(b).

. For instance, in response to the plea form's question of whether he had “been induced to enter [his] plea by any promise or representation of any kind,” Cuero wrote: "STC-NO DEALS W/ THE PEOPLE.” See Cuero v. Cate, 827 F.3d 879, 915 (9th Cir. 2016) (O’Scannlain, J., dissenting). Based on the judge's statements at the plea hearing, "STC” appears to stand for “sentence for the court.” Id. at 901 n.7 (O’Scannlain, J., dissenting).

. Under California law, whether an assault-with-a-deadly-weapon conviction constitutes a strike is based on the conviction's underlying facts. See, e.g., People v. Winters, 93 Cal.App.4th 273, 280, 113 Cal.Rptr.2d 158 (2001) (noting that not all assault-with-a-deadly-weapon convictions constitute a strike).

. California Penal Code section 969.5(a). provides:
Whenever it shall be discovered that a pending complaint to which a plea of guilty has been made under Section 859a does not charge all prior felonies of which the defendant has been convicted either in this state or elsewhere, the complaint may be forthwith amended to charge the prior conviction or convictions and the amendments may and shall be made upon order of the court. The defendant shall thereupon be arraigned before the court to which the complaint has been certified and shall be asked whether he or she has suffered the prior conviction. If the defendant enters a denial, his or her answer shall be entered in the minutes of the court. The refusal of the defendant to answer is equivalent to a denial that he or she has suffered the prior conviction.

.Each prior “serious felony” conviction adds a five-year enhancement to a defendant’s sentence. Cal. Penal Code § 667(a)(1).

. As noted in People v. Superior Court (Romero), 13 Cal.4th 497, 504, 529-30, 53 Cal.Rptr.2d 789, 917 P.2d 628 (1996), pursuant to California Penal Code section 1385(a), a trial court may dismiss a strike if it is in furtherance of justice.

. A Wende brief, named after People v. Wende, 25 Cal.3d 436, 158 Cal.Rptr. 839, 600 P.2d 1071 (1979), is similar to a brief filed in federal court pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

. In light of its finding that habeas relief was warranted based on the People’s court-approved amendment, the majority did not address Cuero's ineffective assistance of counsel claim. See Cuero, 827 F.3d at 883 n.4.

. While the language in some of our opinions may support the majority's conclusion, it is the Supreme Court’s precedent, not ours, that matters here. See, e.g., Glebe v. Frost, —U.S —, 135 S.Ct. 429, 431, 190 L.Ed.2d 317 (2014) (per curiam) (noting that the Supreme Court has "repeatedly emphasized [that] circuit precedent does not constitute clearly established Federal law, as determined by the Supreme Court” (internal quotation marks omitted)).

. The imposition of a sentence or entry of judgment has a similar effect in other states within the Ninth Circuit. See, e.g., Alaska R. Crim. P. 11(e); Haw. R. Penal P. 32(d); Idaho Crim. R. 33(c); Nev. Rev. Stat. Ann. § 176.165; Or. Rev. Stat. Ann. § 135.365.

. In the last sentence of footnote 12, the majority states that, "[i]n any event, the state did charge 'all prior felonies of which [Cuero] ha[d] been convicted' in the original complaint — it simply did not charge Cuero’s felony assault conviction as a strike.” Cuero, 827 F.3d at 889 n.12 (alterations in original). Presumably, this statement was intended to imply that section 969.5 is not applicable in this case. There is a good reason the majority buried this statement in a footnote — it has no support. Nothing in existing case law suggests that section 969.5 does not apply to a strike, which is, after all, a felony. Further, the California Court of Appeal has affirmed amendments to add strikes under California Penal Code section 969a, which employs the same “does not charge all prior felonies of which the defendant has been convicted” language. See, e.g., People v. Sandoval, 140 Cal.App.4th 111, 132-34, 43 Cal.Rptr.3d 911 (2006). Thus, section 969.5 clearly applies here.

. In addition, federal habeas corpus jurisdiction does not extend to alleged violations of state law. See, e.g., Guzman v. Morris, 644 F.2d 1295, 1297 (9th Cir. 1981); 28 U.S.C. § 2254(a).

. Section 667(f) specifically refers to "serious and/or violent felony convictions.” However, as subsequent case law makes clear, a "serious and/or violent felony conviction” under section 667(f) constitutes a strike. See, e.g., People v. Acosta, 29 Cal.4th 105, 111, 124 Cal.Rptr.2d 435, 52 P.3d 624 (2002) ("Each of these crimes is either a 'serious felony’ ... or a 'violent felony’ ... and therefore is a strike under the Three Strikes law.”). Because the terms are interchangeable, and for the sake of clarity, this dissental uses the word “strike,” as opposed to the phrase "serious and/or violent felony conviction,” when discussing section 667(f).

. The People's briefing did not address how its amendment is consistent with state contract law. Nonetheless, we have an independent duty to ask “what arguments or theories ... could have supported[ ] the state court's decision; and then [] ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court.” Harrington, 562 U.S. at 102, 131 S.Ct. 770.

. The three cases cited by the majority in which specific performance was ordered involved defendants who, in reliance on their plea agreements, took actions that could not be undone. See Buckley, 441 F.3d 688 (testifying against codefendants); Brown v. Poole, 337 F.3d 1155 (9th Cir. 2003) (serving as a model inmate during her first few years in confinement); In re Timothy N., 216 Cal.App.4th 725, 157 Cal.Rptr.3d 78 (2013) (successfully completing probation).